# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

DAVID C. ZELLER, *Prisoner Identification numbers #369326, #30822,*

    Plaintiff,

v.

OFFICER SERGEANT LANE, *Welfare and Property Officer,*
WARDEN WOLFE, *JCI,*
CAPTAIN ROWLAND, *JCI, B. Building,* and
SERGEANT JORDAN,

    Defendants.

Civil Action No. TDC-17-1016

## MEMORANDUM OPINION

Plaintiff David C. Zeller is incarcerated at North Branch Correctional Institution in Cumberland, Maryland. He filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden John Wolfe, Jr., Sergeant Lane, Sergeant Jordan and Captain Rowland based on events that occurred when he was incarcerated at Jessup Correctional Institution (JCI), in Jessup, Maryland. Zeller alleges that he did not receive an indigent prisoner "welfare package," he was denied access to medical treatment, and he was threatened by a correctional officer. Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which is now ripe for disposition. Having reviewed the pleadings, briefs, and exhibits, the Court finds that no hearing is necessary to decide the Motion. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion is GRANTED.

## BACKGROUND

In his Complaint, Zeller describes himself as a 64 year-old, indigent inmate who suffers from paranoid schizophrenia. Zeller claims that for approximately five months from September 2016 to March 2017, he did not receive a welfare package, consisting of items such as envelopes, paper, pens, soap, laundry detergent, toothpaste, deodorant, razors, shampoo, and shaving cream. Inmates may request a welfare package once every 30 days if the balance in their commissary account is less than four dollars.

In mid- to late October 2016, Zeller asked Sgt. Lane, the property manager for his housing unit, why he had not received his welfare package. Sgt. Lane responded that the prison had run out of welfare packages and that he would re-order them. During a tier inspection in January 2017, Zeller asked Warden Wolfe why he had not received his welfare packages since 2016. Warden Wolfe replied that the paperwork for ordering the packages had just been signed.

Zeller further complains that while he was in disciplinary segregation, Capt. Rowland delayed his welfare package requests and required him to write a new request every 30 days. Zeller claims that Capt. Rowland hoards welfare package request forms and "holds back" soap powder, laundry detergent, and razors from Zeller's welfare package. Am. Compl. at 3, ECF No. 4. Zeller states that he trades away his pain medication to obtain these supplies.

According to Capt. Rowland, there was a five-month shortage of welfare packages at JCI. In July 2016, the beginning of a new fiscal year, JCI did not receive its requisition of welfare packages. The existing supply of welfare packages was exhausted by mid-August. Sgt. Lane re-ordered the welfare packages, but the requisition could not be processed until funding became available. Capt. Rowland denies that he or other correctional officers prevented Zeller from accessing writing materials or necessary items such as soap or toothpaste. According to Capt.

Rowland and Sgt. Lane, Zeller was provided toothpaste, a toothbrush, soap, and laundry detergent from emergency stocks until the welfare packages resumed. Zeller, however, disputes that he received such emergency supplies. He acknowledges that he received a writing pad, a pencil, and envelopes from a mental health provider.

Zeller also claims that on May 11 or 12, 2017, Sgt. Jordan refused to allow him to use the restroom while he was waiting to be seen by medical personnel, and that as a result, he urinated on himself and fell out of his wheelchair "onto the floor next to [his] puddle of pee." Am. Compl. at 5. Zeller then got up and ran toward a gate, fell down, and was put back into his wheelchair and returned to his cell by Sgt. Jordan. According to Zeller, Jordan threatened to "slap the shit" out of him and took away his wheelchair. *Id.* at 5-6. Zeller also asserts that that he was not brought to the medical unit for treatment of neck, ankle, and foot pain for a period of two to three days.

Sgt. Jordan has denied preventing Zeller from using the restroom or threatening to assault or physically assaulting him at any time. According to Capt. Rowland, Zeller was never wheelchair bound, but medical staff had provided him with one to facilitate his movements before rescinding the order providing him with a wheelchair. Capt. Rowland further asserts that Zeller destroyed his own wheelchair and that there was no other wheelchair available that would fit in his cell. Capt. Rowland and Sgt. Jordan also deny interfering with Zeller's medical care.

In a November 13, 2017 declaration, Zeller acknowledged that after he had been injured from a fall out of the wheelchair, he had smashed the wheelchair into the wall because he deemed it defective and did not want anybody to get hurt from it. He also acknowledged that it was not Sgt. Jordan, but a different correctional officer, who allegedly denied him restroom access.

3

Finally, Zeller claims that his mental health condition renders him unable to file administrative remedy procedure complaints ("ARPs"), and that prison personnel refused to assist him filing ARPs.

**DISCUSSION**

Defendants seek summary judgment in their favor on several grounds, including: (1) Zeller failed to exhaust available administrative remedies; and (2) Zeller fails to state a valid claim for relief under § 1983. Because the Court finds that Defendants are entitled to summary judgment on these grounds, the Court need not address Defendants' remaining arguments.

**I.     Legal Standard**

Where the parties have both submitted evidence outside of the original pleadings for the Court's review, the Court will treat the Motion as a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(d). Under Federal Rule of Civil Procedure 56(a), the Court may grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson*, 477 U.S. at 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

Summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. Because Zeller is self-represented, his

4

submissions are liberally construed. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Nevertheless, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to preclude summary judgment. *Anderson,* 477 U.S. at 252.

## II. Exhaustion of Administrative Remedies

Defendants raise the affirmative defense that Zeller has failed to exhaust administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2012). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008). In *Ross,* the United States Supreme Court identified three circumstances when an administrative remedy is unavailable. An administrative procedure is not available when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Ross,* 136 S. Ct. at 1859–60.

In Maryland prisons, the Administrative Remedy Procedure is the administrative process that must be exhausted. First, a prisoner must file an ARP with the warden of the prison within 30 days of the incident or when the prisoner gains knowledge of the injury giving rise to the complaint. *See* Md. Code Regs. ("COMAR") §§ 12.07.01.04 – 05.A. (2017). Second, if the ARP is denied, a prisoner must file an appeal with the Commissioner of Correction within 30 days. COMAR § 12.07.01.05.C. If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210 (West 2002); COMAR §§ 12.07.01.03, 12.07.01.05.B. Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. Md. Code Ann., Corr. Servs. § 10-210.

Zeller does not dispute his failure to exhaust administrative remedies before filing his federal Complaint. Rather he claims he is unable to file ARP requests because of his paranoid schizophrenia. Specifically, he asserts that when he filed ARPs on his own, they would always be sent back to him for procedural reasons with instructions to resubmit. He made multiple requests for assistance in filing ARPs to various prison officials, including a case manager, the ARP coordinator, and the Warden, but no one would help him. The instructions provided to inmates on how to file ARPs state that inmates who need assistance in completing or submitting an ARP should write to the ARP coordinator.

Sgt. Shakeya Sellman, the ARP coordinator at JCI, denies having received any requests, written or otherwise, from Zeller for assistance in filing ARPs. Although there is a factual dispute whether Zeller made such requests, it need not be resolved. The record establishes that Zeller, in fact, filed 10 ARPs on a variety of issues, consisting of 39 pages, between August 2, 2016 and January 9, 2017. While most were dismissed for procedural reasons, such as the need for dates, times, and the names of the prison staff involved in the matter, or the inclusion of

...

multiple issues in a single ARP, at least three ARPs, ARP Nos. JCI-1441-16, JCI-1250-16, JCI-1061-16, were fully investigated and dismissed for lack of merit. Thus, Zeller was aware of how to file an ARP in accordance with procedures.

Moreover, the ARP instructions received by Zeller specifically informed him of the timing requirements for ARPs, the need to limit an ARP to one issue, and the need to include dates and the names of involved personnel. The instructions also inform inmates about the appeal procedure.

Where Zeller had instructions on how to file ARPs and had successfully used the process on multiple occasions to receive an adjudication of his complaints on the merits, the Court cannot conclude that Zeller was prevented from availing himself of that process. *See Moore*, 517 F.3d at 725. There is no evidence that RCI officials were unwilling or unable to provide relief, that the process was too opaque to be used, or that prison officials actively thwarted Zeller's filing of grievances. *See Ross*, 136 S. Ct. at 1859–60. Thus, where Zeller either did not assert in an ARP, or did not appeal, claims later raised in his Complaint, the Court concludes that he has failed to exhaust his administrative remedies. Defendants are therefore entitled to summary judgment on this basis alone. Alternatively, even if Zeller had properly exhausted administrative remedies, the Court would still grant summary judgment, as discussed below.

### III. Welfare Packages

Zeller claims that the failure to provide him with welfare packages with hygiene items and writing materials violated his rights (1) under the First Amendment to the United States Constitution, because the lack of writing materials deprived him of access to the courts; and (2) under the Eighth Amendment, because the lack of hygiene products created cruel and unusual conditions of confinement.

### A. First Amendment

Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *see Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978). A deprivation of an inmate's right of access to the courts is actionable, but only when the inmate is able to demonstrate actual injury from such deprivation. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996). The Constitution does not guarantee inmates the ability to litigate every imaginable claim they can perceive, only that they be given the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355. To state a constitutional claim for denial of access to the courts, a prisoner must show that the alleged shortcomings "hindered his efforts to pursue a legal claim." *Id.* at 351; *see also Pearson v. Simms,* 345 F. Supp. 2d 515, 519 (D. Md. 2003). Here, Zeller does not allege that he suffered an actual injury such as missing a filing date or losing the ability to litigate a specific claim due to lack of writing materials and envelopes supplied in welfare packages. Absent an allegation of actual harm, he has not established a viable claim for denial of access to the courts.

### B. Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id.* In order to establish the imposition of cruel and unusual

punishment, a prisoner must prove two elements: (1) that "the deprivation of [a] basic human need was *objectively* sufficiently serious," and (2) that "*subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir. 1995) (citation omitted).

"Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone,* 330 F.3d 630, 634 (4th Cir. 2003). This component requires a showing of "a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993). The key in determining whether prison conditions were cruel and unusual is to examine the effect on the inmate. *See Rhodes,* 452 U.S. at 364.

To establish the subjective element, a plaintiff must provide evidence that the prison official "knows of and disregards an excessive risk of harm to inmate health or safety." *Brown v. N.C. Dep't of Corr.,* 612 F.3d 720, 723 (4th Cir. 2010). "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Id.* (quoting *Case v. Ahitow,* 301 F.3d 605, 607 (7th Cir. 2002)).

Here, it is undisputed that Zeller did not receive a welfare package for some five months. Although there is a dispute whether during that time Defendants provided Zeller with soap and other supplies from an emergency stock, Zeller acknowledges receiving writing materials from a mental health provider at least once during this period. Crucially, Zeller has not alleged, and has not offered evidence to establish, that he sustained a serious or significant injury due to the alleged deprivation of hygiene items. *See Strickler,* 989 F.2d at 1381. Furthermore, he has not provided evidence to rebut Defendants' contention that the unavailability of welfare packages was the result of a missed delivery, an ensuing shortage, and delays based on funding, not any

subjective intent by correctional officers to disregard the need. Under these circumstances, Zeller has not established an Eighth Amendment claim.

## IV. Medical Care

Zeller also claims that he suffers from neck, ankle, and foot pain, and that when he complained about swollen ankles, he did not receive medical attention for a two to three day period. An Eighth Amendment claim relating to inadequate medical care requires a showing of "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). Such indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* A prison official is "deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson v. Lightsey,* 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). A plaintiff can meet the subjective knowledge requirement through direct or circumstantial evidence of a prison official's actual knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields,* 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer,* 511 U.S. at 842). Neither an "inadvertent failure to provide adequate medical care" nor negligence in diagnosing or treating a medical condition amounts to deliberate indifference. *Id.* at 105–06.

In their declarations, Defendants deny delaying or interfering with Zeller's medical care. Zeller does not address medical care in his declaration or provide other verified evidence to refute Defendants' declarations. Thus, Zeller has not provided facts to support the conclusion that these Defendants were aware that he had a condition causing an excessive risk to his health,

that they delayed his medical treatment, or that any delay was the result of anything more than negligence. Furthermore, Zeller's uncontroverted medical records demonstrate that he has been seen by medical providers numerous times for complaints of chronic neck pain and swollen feet and ankles, as well as other conditions. For his complaints of neck pain, he has been provided x-rays, an MRI, and medication. For his swollen feet and ankles, he has been provided medication, compression socks, and x-rays. Thus, there is no evidence that he was denied medical treatment, or that any limited delay in securing medical treatment had any significant adverse effect or was the result of anything more than negligence. Under these circumstances, the Court concludes that Zeller has not established a claim of deliberate indifference by Defendants.

Zeller's claim that his wheelchair was improperly confiscated is similarly unavailing because it is directly contradicted by his declaration, in which states that he deliberately destroyed the wheelchair, which he deemed defective, to prevent anyone else from being injured while using it. Accordingly, the Court will grant Defendants' Motion for Summary Judgment as to Zeller's medical claims.

## V. Use of Force

Zeller also complains that Sgt. Jordan threatened him after an episode when Zeller got up from his wheelchair and ran away. Construed liberally, Zeller asserts a claim for excessive force. To establish an Eighth Amendment violation for use of excessive force, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury inflicted was objectively serious enough to constitute a violation. *Iko v. Shreve,* 535 F.3d 225, 238-39 (4th Cir. 2008). On the subjective element, an inmate must show that the guards used force "maliciously or sadistically for the very purpose of causing

11

harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

Although Zeller alleges that Sgt. Jordan forced him back into his wheelchair, he does not allege that such action was misconduct or caused him any harm. Where he acknowledges that he had starting running toward a gate without permission, Sgt. Jordan's actions could not reasonably be construed as anything but an effort to maintain order. Rather, Zeller complains of Sgt. Jordan's alleged threat to slap him. Sgt. Jordan has denied issuing such a threat. Regardless, a threat to use physical force, or any other verbal abuse, cannot form the basis of an excessive force claim. *See Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979) (holding that a threat to hang a prisoner did not constitute a constitutional violation); *see also Carter v. Morris*, 164 F.3d 215, 219 n.3 (4th Cir. 1999) (stating that the use of racial epithets, while deplorable, does not establish a constitutional claim). Under these circumstances, Zeller has not alleged a viable constitutional claim of excessive force.

Finally, the Court notes that where Zeller has acknowledged Sgt. Jordan did not restrict his restroom access, that Zeller has asserted no viable claims arising from that episode.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted. A separate Order shall issue.

Date: August 8, 2018

THEODORE D. CHUANG
United States District Judge